IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LARRY NIEDERSTADT, ROSE GUILEZ,
and ALAN DUFFY,

    Plaintiffs,

v.                                            No. 16-cv-0255 SMV/GBW

PRESTON ELDRIDGE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion and Supporting Memorandum for Qualified Immunity and Summary Judgment, filed January 17, 2017. [Doc. 39]. Plaintiffs responded on February 21, 2017. [Doc. 43]. Defendant replied on March 10, 2017. [Doc. 44]. Having considered the briefing, the record, and the relevant law, the Court finds that Defendant's motion is well-taken and will be GRANTED.

## Background

Otero County Undersheriff David Hunter received a tip from a confidential informant that Plaintiff Guilez was trafficking marijuana at her residence in Tularosa, New Mexico. [Doc. 39] at 3. He obtained a warrant to search her property.[1] *Id.* The warrant[2] described the property to be searched as consisting of a "single family residence located at 420 Guilez Avenue," the driveway to which was located "200 yards north from the intersection of Guilez

---

[1] Because the parties use the term "property" inconsistently, the Court clarifies at the outset that it uses the term "property" to refer to a parcel of land, encompassing all structures and outbuildings on the property and including all curtilage.
[2] The warrant incorporated by reference the affidavit in support thereof. *See* [Doc. 39-1] at 4, 5–8. The Court therefore uses the term "warrant" to refer to the warrant *and* affidavit.

Avenue and Old Mescalero Road." [Doc. 39-1] at 6. The warrant described the residence as "a small camper trailer, approximately 16' in length, white in color with a[n] orange and yellow stripe running horizontally the length of the camper." *Id.* In addition to the residence (i.e., the camper trailer), the warrant also authorized the search of "any and all curtilage, out buildings, tool boxes, safes/lockboxes, refuse containers, vehicles, or any type of container(s), secured or unsecured, located on the property. . . ." *Id.*

The warrant listed the address of the property to be searched as "420 Guilez Avenue." [Doc. 33] at 1 ¶ 3. There is no such address in Otero County. *Id.* There is, however, a Guilez Lane. *Id.* And, while there is no "420 Guilez Lane," a gate at the entranceway to the property described in the search warrant identified it as "420 Guilez Lane." *Id.*; [Doc. 39] at 4; [Doc. 39-1] at 9.

Defendant and his search team executed the warrant on January 25, 2012. Defendant arrived at the gate identifying the property as "420 Guilez Lane." [Doc. 39] at 4. The property appeared to match the description in the warrant. *Id.* Defendant observed the camper trailer as well as other "out buildings." *Id.* West of the camper trailer was a separate trailer house, not referenced or described specifically in the search warrant. [Doc. 43] at 2. *See generally* [Doc. 39-1] at 6–8. Defendant searched the camper trailer but found that it had been abandoned and contained nothing relevant to the investigation. [Doc. 33] at 3 ¶ 11. Defendant proceeded to search the trailer house, where he discovered contraband. *Id.* at 3 ¶ 12; [Doc. 39] at 5. Plaintiff Duffy was at the trailer house at the time the search was executed, and Defendant detained him. [Doc. 39] at 5. Duffy stated that he was looking for Guilez and that he did not reside there. *Id.* Defendant subsequently released Duffy. *Id.*

Plaintiffs' claims under 42 U.S.C. § 1983 arise from their allegation that Defendant's search of "420 Guilez" actually spanned two separate pieces of property: 1014 Guilez Lane (on which the camper trailer was located), and 1023 Guilez Lane (on which the trailer house was located and Duffy was seized). [Doc. 33] at 2 ¶¶ 4–5, 3 ¶¶ 13–16. Guilez and Niederstadt resided at the latter address. *Id.* at 2 ¶ 5. The properties were adjacent. *Id.* There were no boundaries (e.g., fences or walls) delineating the two properties,[3] though there was some kind of gate through which Defendant apparently passed to get to the trailer house.[4] [Doc. 39] at 4; [Doc. 39-1] at 2 ¶ 17; [Doc. 43] at 6 ¶ 6, 8 ¶ 6.

Plaintiffs allege that Defendant violated their Fourth Amendment rights by (1) searching Guilez and Niederstadt's property (i.e., 1023 Guilez Lane and the trailer house on the property), and (2) detaining Duffy in the course of their search of the property "without a warrant, probable cause, reasonable suspicion, or any other legal justification for doing so." [Doc. 33] at 4 ¶¶ 20–23; [Doc. 43] at 4. Plaintiffs do not object to the search of 1014 Guilez Lane and the camper trailer. [Doc. 43] at 3. Plaintiffs contend that Defendant violated their Fourth Amendment rights when he subsequently entered 1023 Guilez Lane and searched the trailer house on that property. *Id.* The warrant does not describe the trailer house, they assert, and no reasonable officer would

---

[3] Defendant sets out the following statement of material fact in his motion: "The property contained no fences, walls, or other boundaries that would have indicated that the property searched was anything but Guilez Lane." [Doc. 39] at 4. To this factual allegation, Plaintiffs responded: "To the extent that the allegations . . . refer to Plaintiffs' property, Plaintiffs contest this issue as the Plaintiffs' home did not look like anything described in the warrant." [Doc. 43] at 2. Plaintiffs appear to construe the term "property," as used by Defendant, as "residence," i.e., the camper trailer or trailer house. Plaintiffs contend that the respective physical appearances of the residences *did* indicate that there were two separate pieces of property being searched, and they contest Defendant's statement of fact on that basis. *See id.* Plaintiffs do not, however, challenge Defendant's assertion that no fence, wall, or other boundary divided the two properties.

[4] In affidavits accompanying their response, Guilez and Niederstadt each state that Defendant "entered my gate and property and then entered my residence . . . ." [Doc. 43] at 6 ¶ 6, 8 ¶ 6. Plaintiffs do not further describe the gate or provide additional context for this fact. Plaintiffs do not even mention the gate in their response to Defendant's motion and, as discussed *supra*, they do not dispute Defendant's contention that no fence, wall, or other boundary divided the two properties.

3

confuse the camper trailer described in the warrant (white, with an orange or yellow horizontal stripe running across it) with the trailer house (pink in color with no stripe). *Id.* at 3–4. On this rationale alone, Plaintiffs conclude that Defendant violated clearly established law by searching 1023 Guilez Lane and detaining Duffy during the search. *Id.* at 4.

Defendant argues that his search of 1023 Guilez Lane and seizure of Duffy did not violate the Fourth Amendment, much less clearly established law. He asserts that he reasonably believed he was executing a valid search warrant at the correct location. [Doc. 39] at 8–9. He notes that a gate at the entranceway to the property located at the coordinates specified in the warrant identified the property as "420 Guilez Lane," and that the property appeared to contain the camper trailer as described in the warrant, along with other outbuildings also referenced in the warrant. *Id.* at 9. He further contends that he reasonably believed he had entered onto one contiguous piece of property, i.e., the property described in the search warrant. *Id.* at 10. He argues that there were no "fences, walls, or other dividing boundaries" to suggest that the trailer house was part of a separate piece of property. *Id.* Defendant asserts that he reasonably—if mistakenly—believed he was "searching the curtilage and outbuildings of 420 Guilez." *Id.*

## **Summary Judgment and Qualified Immunity**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on

the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although all facts are construed in favor of the non-movant, the non-movant still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

However, where a defendant asserts qualified immunity as a defense, the summary judgment analysis is modified. "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test: first, the plaintiff must show that the defendant's actions violated a constitutional . . . right; second, the plaintiff must show that this right was clearly established at the time of the conduct at issue." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). If the plaintiff satisfies this test, the defendant "then bear[s] the traditional burden of the movant for summary judgment— showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

Courts have discretion to decide which of the two parts of the qualified immunity test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As to the "clearly established" prong, a right is clearly established when "every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Ordinarily, "[i]n this circuit, to show that a right is clearly established, the plaintiff must point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law

to be as the plaintiff maintains.'" *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014)). While there need not be a case "directly on point," the "existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

The Supreme Court has cautioned the lower courts against defining the constitutional question "at a high level of generality." *Id.* at 742. The salient inquiry, rather, is "whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (internal quotation marks omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (the inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition" (internal quotation marks omitted)). Specificity in framing the right "is especially important in the Fourth Amendment context," where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix*, 136 S. Ct. at 308 (first alteration in original) (internal quotation marks omitted). The inquiry in such cases is not whether it was clearly established "that an unreasonable search or seizure violates the Fourth Amendment," *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotation marks omitted), but whether the Fourth Amendment "prohibited the officer's conduct in the situation [he] confronted," *Mullenix*, 136 S. Ct. at 309 (internal quotation marks omitted).

Although courts must view the facts in the light most favorable to the plaintiff, the plaintiff bears the burden of satisfying both prongs of the qualified immunity analysis. *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). Where the plaintiff fails to discuss how the

6

defendant officer's actions violated the plaintiff's constitutional rights, the officer is entitled to qualified immunity. *Rojas v. Anderson*, 727 F.3d 1000, 1003–04 (10th Cir. 2013). Likewise, it is the plaintiff who "shoulders the responsibility in the first instance of citing . . . what [she] thinks constitutes clearly established law." *A.M. v. Holmes*, 830 F.3d 1123, 1152 (10th Cir. 2016) (second alteration in original) (internal quotation marks omitted); *see also Rojas*, 727 F.3d at 1004 (plaintiff's failure to cite any case law supporting his conclusory arguments that officer violated his Fourth Amendment rights entitled the officer to qualified immunity); *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (plaintiffs' mere three mentions of the Fourth Amendment and failure to even reference the terms "qualified immunity" or "clearly established" entitled defendant officer to qualified immunity).

In the Tenth Circuit, the plaintiff has been held to his burden even where the court's own review of the record indicated that the plaintiff might have been able to defeat defendant's qualified immunity defense. *Rojas*, 727 F.3d at 1006 ("Plaintiff might well have been able to satisfy us that Defendants' actions violated his clearly established rights. However, given the sparsity of Plaintiff's argument and his failure to point to any authority to support his claims, . . . Plaintiff . . . [has simply] failed to carry the burden assigned to him by law." (last alteration in original) (citations omitted) (quoting *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013))).

### **Searches Pursuant to Search Warrants**

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This particularity requirement is intended to guard against general or exploratory searches of places and things for which there is no probable cause. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Thus, a

warrant that fails to sufficiently describe the area to be searched is overbroad. *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014). And an officer conducting a search pursuant to a valid search warrant may exceed the scope of the warrant if he searches places that are not described in the warrant. *Id.*

The Fourth Amendment, however, accommodates officers' reasonable mistakes in obtaining and executing search warrants. Not all mistakes give rise to constitutional violations. "[P]ractical accuracy rather than technical precision" governs the determination of whether a warrant describes the place to be searched with sufficient particularity. *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) (internal quotation marks omitted). A description suffices where it "enable[s] the executing officer to locate and identify the premises with reasonable effort" and where there is not a "reasonable probability that another premise might be mistakenly searched." *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (internal quotation marks omitted). Thus a "technically wrong address" will not invalidate a warrant if the warrant otherwise sufficiently describes the place to be searched. *Id.* Additionally, "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." *Garrison*, 480 U.S. at 85.

Likewise, not every overbroad execution of a warrant violates the Fourth Amendment. The Fourth Amendment "allow[s] some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87. An officer's overbroad search does not run afoul of the Fourth Amendment if the officer's "failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88 (officers' search of defendant's apartment was valid, even though the

officers were executing a warrant to search a third party's apartment on the same floor of the apartment building, because the officers reasonably believed that the third floor of the building comprised a single apartment belonging to the third party named in the warrant).

### Seizures Pursuant to Search Warrants

Officers are permitted to detain the occupants of a premises being searched. *Harman v. Pollock*, 586 F.3d 1254, 1262 (10th Cir. 2009) (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). This authority is categorical. *Id.* It extends not only to residents of the property being searched but to "all persons present on the premises," whether or not they have been inside the residence. *United States v. Sanchez*, 555 F.3d 910, 917–18 (10th Cir. 2009). The detention (i.e., seizure) of a person during the execution of a search warrant comports with the Fourth Amendment only to the extent the search itself does, absent some independent basis for the detention. *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009). Where the search itself was illegal, "the justification . . . for the seizure disappears because it was the connection of the individual with a location suspected of harboring criminal activity that provided the reasonable basis for the seizure." *Id.*

### Analysis

To overcome Defendant's qualified immunity defense, Plaintiffs carry the burden of showing that (1) the search of 1023 Guilez Lane and Duffy's detention violated their Fourth Amendment rights, and (2) such rights were clearly established at the time of the search and seizure. That is, Plaintiffs must show that no reasonable officer in Defendant's position would have thought the trailer house was covered by the warrant. Plaintiffs must also cite to the controlling case law that makes it clear that Defendant's actions under the circumstances violated

the Fourth Amendment. Taking all facts and reasonable inferences in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to meet their burden on either prong of the qualified immunity analysis. Accordingly, Defendant is entitled to qualified immunity.

Plaintiffs base their entire argument on the fact that the warrant did not include a physical description of the trailer house. [Doc. 43] at 3–4. It described the camper trailer only. *Id.* Plaintiffs argue that no reasonable officer would have confused the two structures or gone on to search the trailer house after searching the camper trailer.[5] *Id.* Because the search itself was unconstitutional, they conclude, the seizure of Duffy pursuant thereto was also unconstitutional. *Id.* at 4.

While it is true that the trailer house did not physically resemble the camper trailer, this fact is beside the point. Defendant does not contend that he entered the trailer house believing it to be the camper trailer. Indeed, no reasonable officer would have confused the two. Defendant contends, rather, that he searched the trailer house believing it was an outbuilding located on the single piece of property described in the warrant. [Doc. 39] at 10; [Doc. 44] at 8. Plaintiffs utterly fail to develop an argument on this crucial issue, i.e., whether it was objectively reasonable for Defendant to believe he was searching an outbuilding on a single piece of property described in the warrant, even if he in fact was searching a residence on a separate parcel of land.

---

[5] It is not entirely clear whether Plaintiffs contend that the warrant itself was constitutionally deficient or whether they argue solely that Defendant impermissibly exceeded the scope of an otherwise valid warrant. In their response to Defendant's qualified immunity motion, Plaintiffs state: "First, there is no description of [the trailer house] in the warrant and thus [sic] violates the Fourth Amendment." [Doc. 43] at 4. Plaintiffs go on to argue that "Defendant Eldridge's decision to move on from the valid search [of the camper trailer] and search [the trailer house] was outside the scope of the warrant and violated the Fourth Amendment." *Id.* The Court need not further parse Plaintiffs' briefing for clues because, as discussed *infra*, Plaintiffs have failed to supply any cogent legal argument in support of their position that Defendant violated the Fourth Amendment—however the violation is characterized.

Plaintiffs do not dispute, for example, Defendant's contention that "no fences, walls, or other boundaries" divided the two properties.[6] [Doc. 39] at 4. Although Niederstadt and Guilez stated in their affidavits that Defendant entered a "gate" to get to their property, [Doc. 43] at 6 ¶ 6, 8 ¶ 6, they leave this fact dangling without further context or development. Plaintiffs fail to mention the gate in their response brief. The presence of a gate *could* be relevant to Plaintiffs' case, but—even taking all facts and reasonable inferences in the light most favorable to Plaintiffs—it is of little value when presented devoid of further factual development. The Court cannot extrapolate from this single, untethered detail that a reasonable officer would understand he was impermissibly exceeding the scope of the search warrant, particularly when Defendant provided the uncontested fact that there was no fence, wall, or other barrier dividing the properties.

Nor do Plaintiffs provide any other facts that would support their case. They do not describe the distance between the trailer house and the camper trailer or note whether the address of the trailer house was displayed anywhere on or around the residence. They do not note the existence of a separate driveway, mailbox, or any other feature that might clue in a reasonable officer to the fact that he was extending his search beyond the curtilage of one piece of property and entering a separate piece of property. Plaintiffs offer no argument on the meaning of "outbuilding" and fail to address why no reasonable officer would have construed the trailer house as such.

---

[6] As discussed *supra*, Plaintiffs objected to Defendant's assertion of this fact on other, unrelated grounds. *See* n.3. Plaintiffs did not challenge Defendant's assertion that there was no dividing fence, wall, or other boundary. Therefore, the Court accepts this fact as true and deems Plaintiff to have waived any argument to the contrary.

Moreover, Plaintiffs fail to supply *any* relevant case law in support of their position that Defendant violated clearly established law. Plaintiffs state that they "do not take issue with Defendant's statement of the law governing this motion" and cite to three cases setting out the general contours of the qualified immunity analysis and the law on searches and seizures pursuant to warrants. *See* [Doc. 43] at 2, 3–4. Beyond referencing the language of the Fourth Amendment itself, Plaintiffs cite no other authority. Such an anemic recitation of basic legal principles fails to show a violation of Plaintiffs' Fourth Amendment rights, much less that such rights were clearly established. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

Plaintiffs utterly fail to marshal the facts or develop any legal argument showing that Defendant violated their Fourth Amendment rights by searching the trailer house and seizing Duffy or that such rights were clearly established under the circumstances. The Court will not make a case on Plaintiffs' behalf. *See Smith*, 707 F.3d at 1162 ("This isn't to say Mr. Smith lacked (or possessed) a meritorious case. It is to say only we will never know because . . . . Mr. Smith, through his counsel, failed to carry the burden assigned to him by law.").

## Conclusion

Defendant searched the trailer house at 1023 Guilez Lane believing it was an outbuilding on a single piece of property described in the warrant. The Fourth Amendment tolerates an officer's honest, reasonable mistake in conducting a search. Plaintiffs may be correct that the trailer house was not included in the search warrant, but for Fourth Amendment—and qualified

12

immunity—purposes, that showing alone is insufficient to allow their claims to survive. Plaintiffs failed to show that Defendant's actions violated clearly established Fourth Amendment law. Defendant is entitled to qualified immunity and summary judgment, and his motion will be granted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion and Supporting Memorandum for Qualified Immunity and Summary Judgment [Doc. 39] is **GRANTED.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**